## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Cenergy, LLC, *et. al.*,

Case No. 23-11558-cjf
Chapter 11

Debtors[1].

## DEBTORS' JOINT PLAN OF REORGANIZATION DATED FEBRUARY 26, 2024

Plan Proponent:     Debtors, by Counsel
Craig E. Stevenson
**DeWitt LLP**
Two East Mifflin Street, Suite 600
Madison, WI  53703-2865
608-252-9263
ces@dewittllp.com

---

[1] Jointly administered with Case No. 23-11559 *Cenergy II, LLC*, and Case No. 23-11560 *Consumers Cooperative Association of Eau Claire*.

Cenergy, LLC, Cenergy II, LLC and Consumers Cooperative Association of Eau Claire, as chapter 11 debtors-in-possession (the "Debtors"), propose the following Joint Plan of Reorganization (the "Plan"). **This Plan contains provisions for exculpation and an injunction which you should read carefully**.

## ARTICLE 1:  SUMMARY

This Plan proposes to pay in full the Debtors' priority and secured claims, and to pay the Debtors' unsecured creditors from the Debtors' sale of certain parcels of real estate and future cash flow from operations.

This Plan provides for payment to:

- Unclassified administrative claims under Sec. 507(a)(2) and tax claims treated as priority unsecured claims under Sec. 507(a)(8), as provided by Sec. 1123(a)(1) and Sec. 1129(a)(9)(D);
- Two classes of secured claims; and
- One class of non-priority unsecured claims.

**Payment of Administrative Expenses, Priority Claims and Secured Claims.** This Plan provides for full payment of administrative expenses, allowed priority claims, and allowed secured claims.

**Payment of Non-Priority Unsecured Claims.**  Payment to unsecured creditors will be paid from net proceeds of the sales of certain real estate as described in more detail in Articles 4 and 7, which the Debtors expect to generate an estimated $440,000 of net proceeds to be paid to holders of General Unsecured Claims. In addition, the Reorganized Debtor will make quarterly payments based on a calculation of net available cash following each quarter, as also described in more detail in Article 4.  The amount of the quarterly payments is estimated to be at least $200,000, but could be more or less depending on the financial performance of the Reorganized Debtor. The proposed payments to unsecured creditors exceed what those creditors would receive if the Debtors' assets were liquidated in a chapter 7 case, as demonstrated by the liquidation analysis attached hereto as **Exhibit A**.

All creditors and equity security holders should refer to this Plan for information regarding the precise treatment of their claims and interests.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

**ARTICLE 2:  CLASSIFICATION OF CLAIMS AND INTERESTS**

The Plan classifies the Claims and Interests in the Debtor as follows:

2.01    **Class 1.** All Allowed Priority Claims, except Administrative Expenses and Allowed Priority Tax Claims.

2.02    **Class 2.** Allowed Secured Claims of Oakwood Bank, the United States Small Business Administration ("SBA"), TIAA Commercial Finance, Inc. ("TIAA"), Citizens Community Federal N.A. ("CCF") and CHS, Inc.

2.03    **Class 3.** Allowed Secured Claims of KLC Financial, Inc. ("KLC"), Chambers & Owen, Inc. ("Chambers & Owen") and Waumandee State Bank ("Waumandee").

2.04    **Class 4.** Non-Priority Unsecured Claims.

2.05    **Class 5.** Equity interests in the Debtors.

## ARTICLE 3:  TREATMENT OF UNCLASSIFIED ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

**3.01   Unclassified Claims.** Under section § 1123(a)(1) of the Code, Administrative Expenses and Allowed Priority Tax Claims are not in classes.

**3.02   Administrative Expenses.** Administrative Expenses will be paid in full on the Effective Date, or upon such other terms as may be agreed upon by the holder of the Administrative Expense and the Debtors or Reorganized Debtor. An Administrative Expense that arose after the Petition Date in the ordinary course of the Debtors' business shall be paid by the Reorganized Debtor in the ordinary course of business pursuant to the usual and customary terms between the parties.

In addition, the Bar Date Notice filed in this case permitted parties with notice of the rejection of their leases and holders of Sec. 503(b)(9) claims to file requests for payment of those administrative expenses, provided the requests were timely filed on or before the Bar Date set forth in the Bar Date Notice. The following two requests for payment of administrative expenses were properly filed and allowed, and will be paid in full on the Effective Date under this provision:

| Park Ridge | $34,167.42 | Dkt. #128 | 503(b)(9) admin claim |
| 3207 Gateway Drive, LLC | $7,284.81 | Dkt. #131 | Post-petition lease admin claim |

**3.03   Allowed Priority Tax Claims.** Allowed Priority Tax Claims, including any secured claims treated as priority claims as required by Sec. 1129(a)(9)(D), will be paid in full in equal monthly installments of principal and interest at the rate applicable under non-bankruptcy law so that the Allowed Priority Tax Claims are paid in full within 5 years after the Petition Date. The installments shall commence on the 15th day of the first month following the Effective Date. The terms of this Plan shall not affect the rights of a governmental unit under applicable non-bankruptcy law to collect on a Claim arising after the Effective Date or to enforce the terms of the Plan as to an Allowed Priority Tax Claim, including tax liens, or other administrative or judicial collection action available to such governmental unit.

The Debtors believe in good faith that the only priority tax claim to be paid pursuant to this provision is the claim of the Wisconsin Department of Revenue in the priority amount of $526,718.16. The Reorganized Debtor will make monthly payments of at least $12,592.93 in order to fully amortize this claim, with simple interest at the rate of 12% per annum, within 5 years of the Petition Date.

The Internal Revenue Service also filed a priority tax claim, but the Debtors believe in good faith that the claim will be withdrawn or disallowed once tax returns for 2021 are completed and filed.

**ARTICLE 4:  TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS UNDER THE PLAN**

**4.01: Treatment of Claims and Interests under this Plan.**

| Class / Impairment | Treatment |
|---|---|
| Class 1 – **Allowed Priority Claims excluding those in Article 3**<br><br>**Unimpaired** | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full in cash upon the later of (a) the Effective Date, or (b) the date on which the Claim is allowed or approved by a Final Order. The Debtors believe in good faith that there are no Class 1 claims. |
| Class 2 – **Allowed Secured Claims of Oakwood Bank, SBA, TIAA, CCF, and CHS, Inc. (Cenex)**<br><br>**Unimpaired** | The Allowed Secured Claims of Oakwood Bank, SBA, TIAA, and CCF, with reduction for any pre-confirmation payments applied to principal, shall be paid in full pursuant to the terms of the loan documents existing on the Petition Date, or as renewed or modified thereafter by agreement of the parties. As part of the proposed adequate protection of these secured creditors, monthly payments under the loan documents have continued during these Cases.<br><br>Oakwood Bank, SBA, TIAA, and CCF shall retain their Liens in all collateral as identified in the loan documents in the same priority as existed as of the Petition Date with the same validity and effectiveness as in existence on the Petition Date without need to file amended or new Uniform Commercial Code financing statements or mortgages concerning same. |

| | |
|---|---|
| **Class 3 –**<br>**Allowed**<br>**Secured Claims**<br>**of KLC**<br>**Financial, Inc.,**<br>**Chambers &**<br>**Owen, Inc., and**<br>**Waumandee**<br>**State Bank**<br><br>**Impaired** | (a)    **KLC Financial, Inc.** asserts a secured claim in these Cases in the amount of $302,300 (see Claim No. 45 filed in Case No. 23-11558). The Debtors anticipate paying down principal in the total amount of $159,348.54 from the Petition Date to the Effective Date, as shown below: |

| Date | Payment | Principal | Interest |
|------|---------|-----------|----------|
| 9/10/2023 | $26,978.85 | $19,568.65 | $7,410.20 |
| 10/10/2023 | $26,978.85 | $19,667.62 | $7,311.23 |
| 11/10/2023 | $26,978.85 | $19,767.09 | $7,211.76 |
| 12/10/2023 | $26,978.85 | $19,867.06 | $7,111.79 |
| 1/10/2024 | $26,978.85 | $19,967.54 | $7,011.31 |
| 2/10/2024 | $26,978.85 | $20,068.52 | $6,910.33 |
| 3/10/2024 | $26,978.85 | $20,170.02 | $6,808.83 |
| 4/10/2024 | $26,978.85 | $20,272.03 | $6,706.82 |
| **Totals:** | **$215,830.80** | **$159,348.54** | **$56,482.26** |

Thus, the remaining secured claim of KLC as of the Effective Date is anticipated to be $142,951.46. The remaining principal balance of KLC's secured claim shall be in paid in full with interest at the rate of 9.5% per annum with monthly payments of $3,580.00 for 36 months or until this claim is paid in full. Payments shall commence no later than the 10th day of the month following the Effective Date of this Plan and continue on or before the 10th day of each month, unless KLC consents to a different payment schedule.

The remaining unsecured claim of KLC shall be classified, treated and paid as part of Class 4, as described below.

The terms of the loan documents between KLC and the Debtors in effect on the Petition Date shall remain in force and effect, except that such loan documents are modified to eliminate any provision that provides for a default due to (i) the Debtors' insolvency, (ii) the filing of the Cases, (iii) any sales or other disposition of KLC collateral during the Cases or pursuant to the Plan, or (iv) the financial condition of the Debtors' business.

KLC shall retain its Liens in all collateral as identified in the loan documents in the same priority as existed as of the Petition Date without need to file amended or new Uniform Commercial Code financing statements concerning same and with the same validity and effectiveness as in existence on the Petition Date.

(b)    **Chambers & Owen, Inc.** asserts a secured claim in these Cases in the amount of $195,321.04 (see Claim No. 3 filed in Case No. 23-11558). The secured claim of Chambers & Owen shall be paid in full with interest at the rate of 9.5% per annum with monthly payments of $4105.00 for 60 months or until this claim is paid in full. Payments shall commence no later than the 15th day of the month following the Effective Date of this Plan and

continue on or before the 15th day of each month, unless Chambers & Owen consents to a different payment schedule.

Chambers & Owen shall retain its Liens in all collateral as identified in the documents between the parties in the same priority as existed as of the Petition Date and with the same validity and effectiveness as in existence on the Petition Date without need to file amended or new Uniform Commercial Code financing statements concerning same.

(c)    **Waumandee State Bank** has two Allowed Secured Claims: (1) in the amount of $1,536,652.69 as of January 24, 2024 (the "Four Properties Note"), and (2) in the amount of $1,315,247.96 as of July 29, 2023 (the "Lake Hallie Note").

The Lake Hallie Note bears interest at 6.250% and is payable in equal monthly payments of $11,249.01 on the 10th of each month, with a final payment of all unpaid principal and interest due on November 10, 2027. The Lake Hallie Note is secured by a real estate mortgage and assignment of leases and rents in the Debtors' real property located at 2750 120th Street, Lake Hallie, WI (the "Lake Hallie Store, Store #3721). The Lake Hallie Note shall be repaid according to its terms, and the loan documents between Waumandee and the Debtors in effect on the Petition Date shall remain in force and effect, except that such loan documents are modified to eliminate any provision that provides for a default due to (i) the Debtors' insolvency, (ii) the filing of the Cases, (iii) any sales or other disposition of Waumandee collateral during the Cases or pursuant to this Plan, or (iv) the financial condition of the Debtors' business.

The Four Properties Note bears interest at 8.300% and is payable in equal monthly payments of $12,098.12 on the 23rd of each month, with a final payment of all unpaid principal and interest due on January 23, 2027. The Waumandee Four Properties Note is secured by mortgages in the following four parcels of real estate owned by the Debtors:

| Parcel | Estimated fair market value | Entity |
|---|---|---|
| 3731 - Arcadia Store | 1,100,000.00 | Cenergy LLC |
| 3742 - Cornell Store | 1,100,000.00 | Cenergy LLC |
| 3770 - Barron Store | 400,000.00 | CCA of Eau Claire |
| Commerical Blvd Land | 200,000.00 | Cenergy V LLC |

The Debtors have engaged a real estate broker to list for sale the Commercial Blvd Land and Cornell Store properties. Upon the closing of the sales, the net proceeds of each sale shall be allocated as follows:

(1) <u>Cornell Store</u> property – first $600,000 of net proceeds paid to Waumandee to reduce outstanding principal due on the Four Properties Note, with the remaining net proceeds (estimate $390,000) retained by the Reorganized Debtor to be disbursed to Class 4 claims as further described in this Plan, and

(2) <u>Commercial Blvd Land</u> - $50,000 paid to Waumandee to reduce outstanding principal due on the Four Properties Note, with the remaining net proceeds (estimate $140,000) retained by the Reorganized Debtor to be disbursed to Class 4 claims as further described in this Plan.

Following the sale of both the Cornell Store and Commercial Blvd Land properties, the remaining balance due on the Four Properties Note shall bear interest at the WSJ Prime Rate then in effect with payments to be reamortized over 20 years. At the request of Waumandee the Debtor shall execute loan documents reasonably necessary to reflect these terms provided the terms of the documents are consistent with the existing loan documents in effect as of the Petition Date and the applicable terms of this Plan.

Property taxes are due on the real property securing the Waumandee State Bank claims as follows:

|  | Taxes | Interest | Total Due |
|---|---|---|---|
| Comm. Blvd | $1,681.71 | $218.62 | $1,900.33 |
| Lake Hallie | $7,896.36 | $1,026.53 | $8,922.89 |
| Arcadia Store | $9,142.82 | $1,188.57 | $10,331.39 |
| Cornell Store | $2,227.76 | $289.61 | $2,517.37 |
| Barron Store | $2,361.10 | $460.42 | $2,821.52 |

As to the Cornell Store and Commercial Blvd Land, those taxes and any accrued interest thereon will be paid from the proceeds of the sales of the real estate described in this Plan. The other real estate taxes and any accrued interest thereon will be paid in full within 90 days of the Effective Date.

| | |
|---|---|
| **Class 4 – Allowed General Unsecured Claims**<br><br>**Impaired** | Class 4 consists of the holders of Allowed Unsecured Claims which shall receive distributions pro rata according to the allowed amount of their claims.<br><br>The distributions shall be as follows:<br><br>(1) **Distribution of net sale proceeds.** As described above with respect to treatment of the Class 3 "Four Properties Note" of Waumandee State Bank, the Commercial Blvd Land and Cornell Store properties shall be sold, and following the proposed payments to Waumandee State Bank under Class 3, Class 4 creditors will receive an estimated $530,000. |

| | |
|---|---|
| | (2) **Distribution of net available cash.** The Reorganized Debtor shall calculate and disburse to holders of Class 4 claims its "Net Available Cash" on a quarterly basis for the three years following the Effective Date. Net Available Cash is calculated and determined as follows:<br><br>Net Available Cash shall be determined as reflected in a quarterly report prepared not later than the last day of the month following the end of each calendar quarter, beginning with a report to be prepared no later than October 31, 2024 for the quarter ending September 30, 2024. Such quarterly reports shall be in substantially the same format Cash Flow Projections included in **Exhibit B** attached hereto, with updated projections for subsequent quarters.<br><br>Payments to unsecured creditors shall be made by the Reorganized Debtor, which shall distribute payments each quarter to holders of Allowed Unsecured Claims in this class on a pro rata basis.<br><br>Any holder of an Allowed Unsecured Claim may request and obtain copies of the quarterly reports on which distributions are based by emailing Jake Day, VP of Finance of the Reorganized Debtor, at jake.day@megacoop.com. |
| Class 5 – **Equity Interests in the Debtors**<br><br>**Unimpaired** | Debtor Consumers Cooperative Association of Eau Claire owns 100% of the member interests of Debtor Cenergy, LLC and Cenergy II, LLC. Under Sec. 1123(a)(5)(C), upon the Effective Date, Cenergy and Cenergy II shall be dissolved, and all assets and liabilities of Cenergy and Cenergy II shall merge and vest in Consumers Cooperative Association of Eau Claire. Consumers Coopeative Association of Eau Claire shall retain no other value on account of its member interests in Cenergy and Cenergy II on or after the Effective Date. On and after the Effective Date, all claims against Cenergy or Cenergy II or collateral owned by Cenergy or Cenergy II shall be deemed assumed by and allowed against the Reorganized Debtor and its property, subject to the terms and limitations set forth in this Plan. Notwithstanding the forgoing, the Reorganized Debtor shall be permitted to continue to deal with creditors and other third parties under the name "Cenergy" to facilitate and accommodate an orderly transition of operations following the Effective Date.<br><br>The equity interests of Consumers Cooperative Association of Eau Claire are owned by 795 individual shareholders who each own 1 share in the cooperative.  The current holders of shares in Consumers Cooperative Association of Eau Claire shall retain their existing shares and their related rights and attributes in existence as of the Petition Date. |

**ARTICLE 5:  ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**5.01   Objection to Claims; Prosecution of Disputed Claims.** The Debtors, the Reorganized Debtor and any other party in interest may object to the allowance of any Claim(s) filed in these Cases. All objections shall be litigated to a Final Order; provided, however, that any party in interest may compromise and settle objections to Claims without notice and without the approval of the Court. Unless otherwise permitted by the Court, all parties in interest shall serve and file all objections to Claims within 60 days after the Effective Date.

**5.02   Payments and Distributions on account of Disputed Claims.** No distribution will be made on account of a Disputed Claim unless and until it is allowed.

**ARTICLE 6:  PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**6.01   Assumption and Cure.** As of the Effective Date the Debtors shall be deemed to assume all executory contracts and unexpired leases of the Debtors, except: (a) any contracts or leases previously rejected during these Cases upon a motion by the Debtors, (b) those contracts or leases listed on Exhibit D as referenced in Section 6.02, and (c) the contracts and leases listed in Section 6.03. The attached **Exhibit C** includes proposed cure amounts (if any) for contracts and leases to be assumed. Any party whose contract or lease is listed on Exhibit C may object to the amount of the proposed cure amount for its contract listed on Exhibit C, or if not listed, object and state the amount of any cure the party believes is due under the contract to be assumed, within **30 days after the date on which the Court enters the Confirmation Order**. After such deadline passes, payment within 90 days following the Effective Date of the cure amounts listed in Exhibit C will be deemed to satisfy the requirements of Sec. 365(b)(1) with respect to each contract or lease listed on Exhibit C.

**6.02   Rejection.** The Debtor rejects the contracts and leases listed on **Exhibit D** as of the Effective Date. Any leased personal property shall be returned to the lessor on the Effective Date, or within such reasonable time thereafter as arrangements can be made with the lessor or its agent.

**6.03   Rejection of all Holiday Contracts and Leases; Post-effective Date Transition and Injunction Periods.** The Debtors reject all contracts and leases with Holiday and its affiliates as of the Effective Date. Holiday and its affiliates shall be entitled to file a proof of claim (or amend any existing proof(s) of claim) to include rejection damages as provided in Section 6.04.

(a)   Thirty-day Temporary Injunction as to Holiday-owned Stores.  The Debtors and Holiday will enter into an agreement to provide for transition or closure of the five stores owned by Holiday affiliate Indianhead Oil, and currently operated by the Debtors (the "Holiday-owned Stores"). The Reorganized Debtor shall have 30 days following the Effective Date to complete the disposition of the Debtors' assets located at the Holiday-owned Stores as provided in Section 7.03. Holiday shall be enjoined from interfering with said disposition or the Reorganized Debtor's access to the Holiday-owned Stores premises during said 30-day period. The 30-day injunction provided for under this section shall be automatically dissolved on the 31st day following the Effective Date, unless prior to such date, the Reorganized Debtor moves the Court for an extension of the injunction on motion and notice to Holiday.

(b)   Ninety-day Temporary Injunction for Transition Stores.   Notwithstanding the rejection of all Holiday contracts as of the Effective Date, the Reorganized Debtor shall have a period of 90 days following the Effective Date to transition and rebrand the stores that currently operate as Holiday-franchised stores, excluding the five Holiday-owned Stores, (the "Transition Stores"), and during such 90-day period Holiday shall be enjoined from (1) interfering with the Reorganized Debtor's operations at the Transition Stores, and (2) without the Reorganized Debtor's authorization, shipping to and/or invoicing for branded product or inventory to the Transition Stores which cannot be transferred or sold once the Reorganized Debtor is no longer operating any Holiday-branded stores. The forgoing injunction shall be condition upon the Reorganized Debtor's substantial compliance with its obligations under the terms and conditions of the franchise agreements with respect to each Transition Store until such Transition Store is rebranded, in the ordinary course established between the parties, including without limitation (i) provisions related to payment for inventory and franchise fees incurred prior to the transition until the stores are fully transitioned and rebranded, and (ii) provisions respecting the rights and duties as to Holiday's intellectual property and brand rights. Holiday may move the Court to modify, condition or dissolve the injunction if Holiday provides written notice to the Reorganized Debtor of any breach of these conditions which is not cured within 14 days of delivery of the notice. The injunction provided for under this section shall be automatically dissolved on the 91st day following the Effective Date, unless prior to such date, the Reorganized Debtor moves the Court for an extension of the injunction on motion and notice to Holiday.

**6.04   Rejection Damages.** A proof of a claim arising from the rejection of an executory contract or unexpired lease under Section 6.02 or 6.03 must be filed no later than 30 days after the date on which the Court enters the Confirmation Order. **If no proof of claim is timely filed, any Claim(s) on account of rejection of a contract or lease under Section 6.02 or 6.03 shall be forever barred and extinguished against the Debtors, their estates, and the Reorganized Debtor.**

## ARTICLE 7:  MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01   Cash for Payments on and after the Effective Date.** Cash necessary to fund payments on or shortly after the Effective Date shall be from cash on hand on the Effective Date, the regular business income of the Reorganized Debtor and from the proceeds of the sales of real estate as described in Section 7.02. In addition, Debtor's counsel retains $192,881.84 in a law firm trust account for payment of approved fees of professionals, including counsel for the Debtors.

**7.02   Sale of Real Estate.** The Reorganized Debtor shall sell the real estate as described with respect to treatment of Waumandee State Bank in Article 4 of this Plan, and shall make related disbursements as follows:

(a)   With respect to the Commercial Blvd Property, the Reorganized Debtor shall list the property for sale through a qualified commercial broker whose commission shall not exceed 6% of the gross sale price. The initial list price shall be at least $199,500 and may be adjusted at the recommendation of the broker. The sale proceeds shall be disbursed as follows:

   i.   First, on account of ordinary and customary costs of sale, including without limitation, the broker's fees, title and documentation fees ordinarily paid by the seller, prorations such as taxes and utilities, unpaid real property taxes, and real

estate transfer fees;

    ii.    Next, $50,000 directly to Waumandee State Bank to be applied to the balance then due on the Four Properties Note (as defined in Article 4); and

   iii.    Then, any remaining balance (estimated to be approximately $140,000) shall be paid by the Reorganized Debtor on account of Class 4 claims as set forth in Article 4 of this Plan.

(b) With respect to the Cornell Store Property, the Reorganized Debtor shall list the property for sale and leaseback through a qualified commercial broker whose commission shall not exceed 6% of the gross sale price. The initial list price shall be at least $1,100,000 and may be adjusted at the recommendation of the broker. The sale proceeds shall be disbursed as follows:

    i.    First, on account of ordinary and customary costs of sale, including without limitation, the broker's fees, title and documentation fees ordinarily paid by the seller, prorations such as taxes and utilities, unpaid property taxes, and real estate transfer fees;

    ii.    Next, $600,000 directly to Waumandee State Bank to be applied to the balance then due on the Four Properties Note (as defined in Article 4); and

   iii.    Then, any remaining balance (estimated to be approximately $390,000) shall be paid by the Reorganized Debtor on account of Class 4 claims as set forth in Article 4 of this Plan.

**7.03  Disposition of assets located at Holiday-owned Stores.**  As noted in Section 6.03, the Debtors reject all contracts and leases with Holiday as of the Effective Date, including the franchise agreement and leases for the five Holiday-owned Stores currently operated by the Debtors. If Holiday intends to purchase the Debtors' assets located at the five Holiday-owned Stores (including without limitation any inventory, fixtures, furnishing, and equipment), Holiday may notify the Reorganized Debtor by providing a letter-of-intent or proposed asset purchase agreement for those assets. The Reorganized Debtor is authorized but not required, under Sec. 1123(a)(5)(C) to sell the Reorganized Debtor's assets located at the Holiday-owned Stores upon price(s) and terms acceptable to the Reorganized Debtor. If Holiday does not elect to purchase the assets located at the five Holiday-owned stores by so indicating its intent on or before April 1, 2024, or if the Reorganized Debtor does not accept the price(s) and terms proposed by Holiday for such proposed purchase, then the Reorganized Debtor is authorized to remove the Reorganized Debtor's assets from the five Holiday-owned Stores within 30 days following the Effective Date, and abandon any assets that will not be removed and used by the Reorganized Debtor in its operations going forward.

The terms of any sale pursuant to this section shall allocate the purchase price as to the various classifications of assets to be purchased (e.g., inventory, fixtures, furnishing, equipment, etc.). All assets sold pursuant to this section shall be sold free and clear of liens, with liens to attach to the proceeds of the sale in the same scope and priority as existed on the Petition Date with respect to such assets. The Reorganized Debtor shall distribute such proceeds according to the scope and priority of such liens, or by agreement with the holders of such liens. The Reorganized Debtor or any holder of such a lien may move the Court for relief with respect to the disposition of any proceeds of a sale under this section.

**7.04  New fuel supplier and transition from Holiday brand.**  In anticipation of the

rejection of the Holiday contracts provided under Section 6.03, the Reorganized Debtor will enter into a new long-term supply contract with U.S. Oil, under which U.S. Oil will (a) provide financial and logistical assistance to transition and rebrand stores that are currently Holiday-brand franchised stores, and (b) supply fuel to those stores once with transition and rebranding is completed. The Reorganized Debtor has secured terms and commitments from U.S. Oil, but the effectiveness of the new contract will be conditioned on confirmation of the Plan.

**7.05  Management of the Reorganized Debtor after the Effective Date.** Existing management, including the duly elected directors of the Reorganized Debtor, shall continue to manage the affairs of the Reorganized Debtor after the Effective Date.

Diversified Management Group, Inc. will continue to manage the business of the Reorganized Debtor following the Effective Date subject to the discretion of the board of directors, with K. Michael Buck continuing as CEO of the Reorganized Debtor, and Jake Day continuing as Vice President of Finance of the Reorganized Debtor.

**7.06  Corporate governance.** The Reorganized Debtor shall amend its bylaws to include a provision prohibiting the issuance of nonvoting equity securities. In all other respects, the bylaws of the Reorganized Debtor shall remain unaltered, including without limitation that (i) existing holders of equity securities in the Reorganized Debtor shall retain their rights and powers with respect to dividends and to vote to elect directors and (ii) directors and officers shall retain all rights to indemnification under Article 7 of the bylaws, provided that the Reorganized Debtor shall retain the right to dispute whether any particular indemnification claim arose prior to the Petition Date for purposes of this Plan.

**7.07  Distributions Due after the Effective Date.** The Reorganized Debtor shall manage all payments, installments and distributions to be made under the Plan. If the terms of the Plan require a distribution to any party that is less than $25.00, the Reorganized Debtor may elect to withhold the distribution until the accrued amount of distributions due to that party is at least $25.00. If the total distributions due to any party under the Plan do not equal or exceed $25.00, then said distributions will be retained as unclaimed distributions under Section 7.10.

**7.08  Withholding Taxes.** The Reorganized Debtor shall withhold from payments, installments and distributions under the Plan any amount which must be withheld for taxes to the extent required by applicable law.

**7.09  Professional Fees and Expenses.** Each Person retained or requesting compensation in this Case pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Code shall be entitled to file an application for allowance of final compensation and reimbursement of expenses in the Case prior to case closure, or any other date set by the Court. The Reorganized Debtor shall not pay any professional fees or costs incurred before the Confirmation Date except as approved by the Court or otherwise allowed by law. The payment of any professional fees or costs after the Confirmation Date to implement the Plan shall only be made if such fees and costs are reasonable.

**7.10  Mailing and Unclaimed Distributions.** All distributions made by mail will be made to (a) the latest mailing address filed of record with the Court for the party entitled to it, (b) if no such mailing address has so been filed, the mailing address reflected in the schedule of assets and liabilities filed by the Debtors or (c) any other address known to Debtors or the Reorganized Debtor

after it takes reasonable actions to locate the party. Any unclaimed distributions which would otherwise have been disbursed to a Creditor with respect to an Allowed Claim shall be retained as property of the Reorganized Debtor if the Creditor cannot be located.

**7.11    Responsible Person.** Except as otherwise may be provided in this Plan, K. Michael Buck, president and CEO of the Reorganized Debtor, shall be responsible for the Reorganized Debtor's execution and implementation of the Plan.

**7.10    Debtors' Property after Confirmation.** Except as otherwise provided in the Plan, all property of the Debtors and their estates shall vest in the Reorganized Debtor as of the Effective Date, free and clear of all liens and encumbrances. As noted in Article 4 with respect to Class 5, all assets of Cenergy, LLC and Cenergy II, LLC shall merge and vest the Consumers Cooperative Association of Eau Claire as of the Effective Date. The Reorganized Debtor will execute or ratify any documents reasonably necessary to confirm the existence and continuation of all obligations of Cenergy and Cenergy II as to the Reorganized Debtor, provided such document(s) do not conflict with the terms of this Plan.

**7.11    Settlement of Actions or Objections.** The Reorganized Debtor may settle or compromise any action or objection without notice or Court approval.

**7.12    Preference, Fraudulent Conveyances, Other Avoidance Actions and Other Causes of Action.** All Causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan are preserved and shall vest in the Reorganized Debtor. Confirmation of the Plan or its terms shall not preclude or estop the Reorganized Debtor from pursuing any claims of the Debtors or the estate against any of the Debtors' Creditors for offset or other Causes of Action. In addition, all Causes of Action of the Debtors against any Person for the recovery of preferences, fraudulent transfers or any other actions under chapter 5 of the Code that arose on or after the Petition Date vest on the Effective Date in the Reorganized Debtor. The actions so vested in the Reorganized Debtor under this section include without limitation any derivative action that any party may have as a right derivative of or from the Debtors.

**7.13    Confirmation of the Plan Without Approval of Impaired Classes.** If the provisions of § 1129(a)(8) or (10) of the Code are not met, the Debtors request that the Court confirm the Plan under Sec. 1129(b) because the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.

**7.14    Payment of Quarterly US Trustee Fees.** The Reorganized Debtor shall pay all quarterly fees owed to the U.S. Trustee from the Effective Date until the Cases are closed by further order of the Court.

## ARTICLE 8 GENERAL PROVISIONS

**8.01    Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

a.    *Administrative Expense* shall mean administrative expenses as defined by § 503(b) of the Code and allowed by the Court.

b.      *Allowed Claim* shall mean any Claim (a) with respect to which a proof of claim has been filed with the Court on or before the date to be fixed as provided by the Court pursuant to Rule 3003; or (b) scheduled in the list of creditors prepared and filed pursuant to Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to amount; and for either (a) or (b), any Claim for which no objection has been filed within the applicable limitation fixed by Rule 3007 or by a Court order, or any Claim for which any such objection has been resolved by an order no longer subject to appeal or for which no appeal is pending.

c.      *Allowed Priority Claim* shall mean an Allowed Claim for which the holder asserts, and is determined to be entitled to, priority under § 507 of the Code, or under any other provision of the Code, except for an Allowed Priority Tax Claim.

d.      *Allowed Priority Tax Claim* shall mean any Allowed Claim within § 507(a)(8) or to be treated as a claim under § 507(a)(8) as required by § 1129(a)(9)(D).

e.      *Allowed Secured Claim* shall mean an Allowed Claim secured by a valid and enforceable lien, security interest, mortgage or other recognized interest in property in which the Debtors have an interest, which is not void or voidable under any state or federal law or subject to set off under § 553 of the Code, but only to the extent of the Claim's value pursuant to § 506(a) of the Code. The portion of an Allowed Claim that is not an Allowed Secured Claim shall be an Allowed Non-Priority Unsecured Claim except as otherwise provided in the Plan.

f.      *Allowed General Unsecured Claim* means an Allowed Claim which is not also any of the following: an Administrative Expense, an Allowed Priority Claim, an Allowed Priority Tax Claim, nor an Allowed Secured Claim.

g.      *Bar Date* shall mean the date set by the Court for Creditors to file a Claim in the Cases, which was November 17, 2023.

h.      *Bar Date Notice* shall mean the notice of the Bar Date filed and served in these Cases on or about October 18, 2023.

i.      *Cases* shall mean the chapter 11 cases commenced in the Court by the Debtors as Case Nos. 23-11558, 23-11559, and 23-11560.

j.      *Cash* shall mean with respect to a payment, a check or electronic draft drawn on a bank account which has sufficient funds to pay the check or draft when it is presented to the bank.

k.      *Cause of Action* includes without limitation all rights of setoff, counterclaim, or recoupment and claims for breach of contracts or for breaches of duties imposed by law or equity, as well as actions and rights of setoff or recoupment rights existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise based in whole or in part upon any act, omission or other event occurring on or prior to the Petition Date or during the course of the Cases, through and including the Effective Date.

l.      *Claim* shall mean any right to payment, or right to an equitable remedy for breach of

contract or performance if such breach gives rise to a right of payment, asserted against a Debtor that was in existence on or as of the Petition Date, whether or not the right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured.

m.    *Class* shall mean the classes specified in Article 2 of the Plan.

n.    *Code* or *Bankruptcy Code* shall mean title 11, United States Code, as amended from time to time.

o.    *Confirmation Date* shall mean the date upon which the Confirmation Order entered pursuant to § 1129 of the Code is entered on the Court's docket.

p.    *Confirmation Order* shall mean the order entered by the Court confirming the Plan under § 1129 of the Code.

q.    *Court* shall mean the United States Bankruptcy Court for the Western District of Wisconsin and any federal court with concurrent or appellate jurisdiction.

r.    *Creditor* shall mean any Person that has a Claim against any of the Debtors that arose or is deemed to have arisen on or before the Effective Date, including a Claim against the Debtors' estates under §§ 502(g) or 502(i) of the Code.

s.    *Debtors* shall mean Cenergy, LLC, Cenergy II, LLC and Consumers Cooperative Association of Eau Claire, and each is a *Debtor*.

t.    *Disputed Claim* shall mean a Claim against the Debtors the allowance of which, in whole or in part, is the subject of a timely objection; provided, however, that for purposes of determining the aggregate amount of Disputed Claims against the Debtors' estates, Disputed Claim shall mean the lesser of (a) the total amount of Disputed Claims as filed with the Court or (b) the total amount of Disputed Claims as estimated by the Court pursuant to 502(c) of the Code; and, provided, further, that in the event the Court estimated a Disputed Claim for purposes of allowance under § 502(c), that estimation shall constitute the Allowed Claim for the purpose estimated.

u.    *Effective Date* shall mean the date as defined in Section 8.02.

v.    *Equity Interests* shall mean the outstanding stock in Debtor Consumers Cooperative Association of Eau Claire as of the Confirmation Date.

w.    *Final Order* shall mean an order entered by the Court as to which the time to appeal or to seek review or rehearing has expired, and as which no appeal or other proceedings for review or rehearing shall then be pending.

x.    *Lien* has the meaning set forth in § 101(37) of the Code.

y.    *Petition Date* shall mean September 1, 2023, the date on which the Debtors filed voluntary petitions for relief under chapter 11 of the Code.

16

z.    *Plan* shall mean this chapter 11 plan of reorganization and any amendments, modifications, supplements, or alterations to it in accordance with the Code.

aa.    *Pro-Rata Basis* shall mean, with respect to any holder of an Allowed Claim, an amount calculated by and reduced to the proportion that the amount of the Claim bears to the aggregate amount of all Claims in the same Class.

bb.    *Reorganized Debtor* shall mean Consumers Cooperative Association of Eau Claire after the Effective Date.

cc.    *Rule or Rules* shall mean the Federal Rules of Bankruptcy Procedure.

Unless the context otherwise requires, defined terms shall have the assigned meanings when used in initially capitalized form in the Plan. The terms defined shall be equally applicable to both the singular and plural forms of each term unless the context otherwise requires. Any term used in the Plan that is not defined here, but that is defined in the Code shall have the meaning assigned to that term in the Code. Any term used in initially capitalized form in the Plan shall have the same meaning in any supplement or amendment to the Plan, unless specifically indicated otherwise.

**8.02    Effective Date.** The Effective Date of this Plan is the day when all the following conditions have been met or waived as provided below: (a) the Confirmation Order has been entered by the Court; (b) there is no stay of the Confirmation Order; (c) there has been no appeal of the Confirmation Order; and (d) the last date for an appeal of the Confirmation Order to be filed has passed. The Debtors may waive conditions (c) and (d). All periods are calculated as provided in Rule 9006(a)(1).

**8.03    Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.04    Binding effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.05    Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06    Controlling effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Wisconsin govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07    Retention of Jurisdiction.** The Court may exercise jurisdiction to the full extent necessary to administer this Case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

In particular, the Court may retain jurisdiction over this Case until the Plan has been fully consummated for all appropriate purposes including, but not limited to, the following:

a.    To hear and determine all applications for compensation of professionals under § 330 of the Code.

b.    To classify or reclassify any Claim, and to resolve objections filed against any Claim. Any failure of the Debtors to object to or to examine any Claim for purposes of voting shall not be deemed a waiver of the Debtors' or Reorganized Debtor's right to object to or to re-examine any Claim in whole or in part.

c.    To determine all questions and disputes arising under the Plan including those regarding title to or interests in the Reorganized Debtor's assets as well as the resolution of all Claims, causes of action, controversies, disputes, or conflicts, including any preference, fraudulent conveyance or avoidance action pending as of the Confirmation Date, and for which jurisdiction is specifically retained in the Plan.

d.    To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order necessary to carry out the purposes and intent of the Plan.

e.    To modify the Plan after confirmation.

f.    To enforce and interpret the terms and conditions of the Plan, and to enforce all orders entered by the Court.

g.    To enter any order, including orders for injunctive relief, necessary to enforce the title, rights and powers of the Debtors or Reorganized Debtor, as well as the imposition of such restrictions, limitations, terms and conditions as the Court may deem necessary.

h.    To supervise or approve any aspect of any Claim that might be pursued on behalf of the Debtors, Reorganized Debtor or any Creditor.

i.    To resolve all adversary actions brought in the Case.

j.    To enter any order concluding and terminating the Case.

## ARTICLE 9:  DISCHARGE

Upon the Effective Date, the Debtors and Reorganized Debtor shall be discharged from any debt that arose before the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtors will not be discharged of any debt (a) to the extent imposed or provided for in this Plan, or (b) described in § 1141(d)(6) of the Code.

## ARTICLE 10:  OTHER PROVISIONS

**10.01 Amendments and Waiver.** Except as otherwise provided in the Plan and § 1127 of the Code, any non-material term of the Plan may be amended or modified at any time, and the

enforcement and observance of any term of the Plan may be waived at any time provided that all Creditors affected by the amendment or waiver have received notice of the proposed non-material amendment or waiver and have not objected in writing within a reasonable period of time and, in any event, any period of time which may be set by the Court.

**10.02 Exculpation and Gatekeeping Provision.** The Plan proponent, its officers, directors, trustees, employees, advisors, professionals or agents (each an "Exculpated Party," and together the "Exculpated Parties") will not incur any liability to any Creditor, or holder of an Administrative Expense or Equity Interest for any act or omission in connection with, related to, or arising out of, the Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, or the property to be distributed under the Plan, except for willful misconduct, and in all respects the Exculpated Parties are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan. Should any Creditor or other party believe that it has a colorable cause of action against any Exculpated Party or Parties, before filing any action in any court of law or equity naming such Exculpated Party or Parties, such Creditor shall first file a motion with the Court requesting determination, after notice and a hearing, that such claim or cause of action represents a colorable claim that is not barred by this provision, and if not barred, whether the Court has jurisdiction to adjudicate the merits of such proposed claim. Any action filed in violation of this provision is barred, enjoined, void and subject to immediate dismissal. The Court shall retain sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and then to adjudicate the claim if the Court has jurisdiction over the merits.

**10.03 Post-Confirmation Stay as to Non-Debtor Co-Obligors and Guarantors.** As of the Effective Date, any obligations of a non-debtor entity as a co-obligor or guarantor of any Claim (a "Co-obligor") shall be deemed amended so that the obligations conform to the provisions of the Plan, and any default existing on or before the Effective Date is deemed waived or cured as to any Co-obligor. So long as the Reorganized Debtor complies with the terms of the Plan after the Effective Date, the Debtors' Creditors are stayed from pursuing any actions to collect their Claims as to any Co-obligors. During the pendency of any such stay as to any Creditor, the statute of limitations applicable to such Creditor's action to collect from a Co-Obligor as to any Claim so stayed shall be tolled. Upon a material default under the Plan as to a Creditor, upon 30 days' notice to the Reorganized Debtor and any Co-obligtor, that Creditor may move the Court for relief from the stay provided by this section to pursue any Co-obligor of its Claim under applicable law. The rights of a Co-obligor to contest the validity of the instruments purporting to bind them shall be preserved and any statute of limitations, statue of repose or other bar to contest the validity of the instruments, or their counterclaims and affirmative defenses shall be preserved and tolled until the Reorganized Debtor has satisfied all its obligations under the Plan or materially defaults in performing under the Plan.

**10.04 Injunction.** Except as otherwise provided in the Plan, all Persons who have held, hold, or may hold Claims as of the Effective Date are permanently enjoined from and after the Effective Date from:

a.   Commencing and continuing in any manner any action or other proceeding of any kind with respect to any Claim against the Debtor, the Reorganized Debtor, or any of its shareholders, officers, agents, employees, representatives, financial advisors, attorneys, accountants or affiliates of any such parties (collectively, the "Related Entities").

b.      Enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtor, the Reorganized Debtor or any Related Entities.

c.      Creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor or any Related Entities, or their property.

d.      Asserting any right of set-off, right of subrogation, or recoupment of any kind against any obligation due the Debtor, the Reorganized Debtor or any Related Entities, or their property.

**10.05 Claims Not Allowed Are Not Paid.** Any Claim that is not an Allowed Claim shall receive no distribution under the Plan and any such Claim is discharged under §1141 of the Code.

**10.06 Consummation.** Upon substantial consummation of the Plan, the Reorganized Debtor may move for a final decree closing the Case and requesting such orders as may be just and equitable.

**10.07 Miscellaneous Provisions.**

a.      "On the Effective Date" as to any action required to be done under the Plan means on the Effective Date itself or as soon as practicable that can be accomplished by a reasonably diligent Person.

b.      The rules of construction used in § 102 of Code shall apply to the construction of the Plan.

c.      All fees under 28 U.S.C. § 1930, due to the U.S. Trustee, that have not been paid shall be paid within 10 days of the Effective Date.

d.      The liens of every Creditor that have been discharged or avoided shall be released of record prior to any installment, payment, distribution or delivery of any property under the Plan to the Creditor. The liens of every Creditor with a Claim that is disallowed or whose lien is avoided shall be void and shall be rendered void by the recording in the appropriate place of record of a certified copy of any order disallowing the Claim or avoiding the lien.

e.      Any orders entered or agreements approved by the Court for the use of cash collateral, for adequate protection or for payments in lieu of the lifting of the automatic stay shall terminate as of the Effective Date. As of the Effective Date, the relationship between the Debtors and all Creditors shall be governed by the Plan.

f.      Unless otherwise provided in the Plan, any holder of an Allowed Unsecured Claim shall not be entitled to the accrual of any interest after the Petition Date on account of the Claim.

g.      The fees and costs of attorneys or other professional Persons to administer consummation of the Plan shall be reasonable.

h.      The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

## CONCLUSION

This Plan reflects the Debtor's best efforts to reorganize its business in a manner that preserves its continued viability, protects the interests of Creditors, and complies in all aspects with the requirements of the Code.

Dated: February 26, 2024

DeWitt LLP

By:  /s/ Craig E. Stevenson
    Craig E. Stevenson (#1060082)
    Two East Mifflin Street, Suite 600
    Madison, WI  53703-2865
    608-252-9263        ces@dewittllp.com

Counsel to the Debtor and Debtor-in-possession,
Cenergy, LLC, Cenergy II, LLC, and Consumers Cooperative
Association of Eau Claire

**EXHIBIT A: LIQUIDATION ANALYSIS**

**Consumers Cooperative Association of Eau Claire Liquidation Analysis (consolidated with Cenergy LLC and Cenergy II LLC)**

| Asset | Value | FLV Adjustment | Net FLV | Costs of Liquidation | Net Liquidation Value | Lien Amount(s) | Lienholder(s) | Notes |
|---|---|---|---|---|---|---|---|---|
| Bank accounts | $ 229,217.02 | | $ 229,217.02 | $ - | $ 229,217.02 | | | No deposit-account control agreement but anticipate liens asserted by secured creditors with interest in cash collateral as proceeds of inventory sales |
| Prepaids/Deposits | $ 347,235.84 | | $ 347,235.84 | $ - | $ 347,235.84 | | | Vendors and professional fees (incl. DeWitt Trust) |
| Receivables | | | | | | | | |
| Ordinary | $ 92,123.84 | 90.0% | $ 82,911.46 | $ 20,727.86 | $ 71,395.98 | $ (1,150,000.00) | Oakwood, SBA, CCF (all assets) | Est. 25% commission to collect |
| Other Receivables- Vendor Rebates | $ 693,812.00 | 75.0% | $ 520,359.00 | $ - | $ 520,359.00 | | | Accrued rebates from vendors and suppliers of inventory. |
| Inventory (fuel and inside stores) | $ 2,092,736.85 | 50.1% | $ 1,048,292.42 | $ 104,829.24 | $ 943,463.17 | $ (195,000.00) | Oakwood, SBA, CCF (all assets) plus C&O (inventory) | Est. 10% commission on sale |
| Fixtures, furnishing and equipment | $ 600,950.00 | 75.00% | $ 450,712.50 | $ 45,071.25 | $ 405,641.25 | $ (143,000.00) | Oakwood, SBA, CCF (all assets) plus KLC (installed equipment) | Est. 10% commission on sale |
| Vehicles | $ 40,000.00 | 90.00% | $ 36,000.00 | $ 3,600.00 | $ 32,400.00 | $ (29,663.55) | TIAA - Isuzu truck | Est. 10% commission on sale / auction |
| Real Estate | | | | | | | | Est. 10% costs of sale (broker commission, closing costs, etc.) |
| Commercial Blvd Land | $ 200,000.00 | | $ 200,000.00 | $ 20,000.00 | $ 180,000.00 | $ (1,536,653.00) | Waumandee Four Properties Note | |
| Arcadia Store | $ 1,100,000.00 | 60.0% | $ 660,000.00 | $ 66,000.00 | $ 594,000.00 | | | 60% based on suspension of operations and sale of "dark store" in chapter 7 liquidation |
| Cornell Store | $ 1,100,000.00 | 60.0% | $ 660,000.00 | $ 110,000.00 | $ 550,000.00 | | | 60% based on suspension of operations and sale of "dark store" in chapter 7 liquidation |
| Barron Store | $ 400,000.00 | 60.0% | $ 240,000.00 | $ 40,000.00 | $ 200,000.00 | | | 60% based on suspension of operations and sale of "dark store" in chapter 7 liquidation |
| Lake Hallie Store | $ 1,800,000.00 | 60.0% | $ 1,080,000.00 | $ 180,000.00 | $ 900,000.00 | $ (1,315,248.00) | Waumandee Lake Hallie Note | 60% based on suspension of operations and sale of "dark store" in chapter 7 liquidation |
| Parking Lot | $ 139,000.00 | | $ 139,000.00 | $ 13,900.00 | $ 125,100.00 | | CCF Mortgage (included in balance above) | Based on LOI received Feb. 2024 to purchase this parcel. |
| Application of Waumandee Escrow | | | | | | $ 212,572.04 | For Lake Hallie Store - held by | Escrow account held by Waumandee State Bank for |
| Subtotals for liquidation | $ 8,835,075.55 | | $ 5,693,728.23 | $ 604,128.36 | $ 5,098,812.26 | $ (4,156,812.51) | | |
| **Liquidation value net of lien amounts** | | | | | | $ 941,999.75 | | |
| Chapter 7 Trustee Fees | | | | | | $ (185,000.00) | | Based on Sec. 326(a) formula on distribution of all proceeds net of costs to liquidate |
| Chapter 7 Administrative Expenses | | | | | | $ (65,000.00) | | Estimated chapter 7 professionals, including attorney and accountant for the trustee; admin claims of landlords for stub rent |
| Accrued unpaid taxes (payroll and sales) | | | | | | $ (85,000.00) | | Estimate based on recent payroll and sales taxes |
| Wage claims (earned but unpaid) | | | | | | $ (90,000.00) | | Estimated wages from one-week payroll cycle that would be unpaid at cessation of operations |
| Unsecured Priority Claims | | | | | | $ (526,718.00) | | State of Wisconsin Priority |
| **Amount remaining to pay general unsecured creditors** | | | | | | **$ (9,718.25)** | | |

**EXHIBIT B: CASH FLOW PROJECTIONS**

Consumers Cooperative Assn.
Projected Cash Flows

| | Beginning | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Q1 2025 | Q2 2025 | Q3 2025 | Q4 2025 | Q1 2026 | Q2 2026 | Q3 2026 | Q4 2026 | Q1 2027 | Q2 2027 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FUEL SALES** | | | | | | | | | | | | | | | | | | |
| Sales - Petroleum | | 2,934,695 | 3,689,810 | 2,857,653 | 2,684,077 | 3,873,722 | 2,950,326 | 2,697,377 | 7,636,075 | 8,800,546 | 9,277,697 | 9,569,031 | 7,674,255 | 8,844,549 | 9,324,086 | 9,616,877 | 7,712,626 | 8,888,771 |
| Sales - Gallons | | 981,503 | 1,234,050 | 955,737 | 897,684 | 1,295,559 | 986,731 | 902,133 | 2,553,871 | 2,943,326 | 3,102,909 | 3,200,345 | 2,566,641 | 2,958,043 | 3,118,423 | 3,216,347 | 2,579,474 | 2,972,833 |
| Average Sale Price/Gallon | | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 | 2.99 |
| **INSIDE SALES** | | | | | | | | | | | | | | | | | | |
| Sales - Tobacco | | 133,875 | 166,318 | 129,249 | 120,641 | 176,819 | 136,098 | 124,366 | 373,696 | 410,150 | 428,694 | 450,401 | 384,906 | 422,454 | 441,555 | 463,913 | 396,454 | 435,128 |
| Sales - Cigarettes | | 415,129 | 517,068 | 402,184 | 377,509 | 554,644 | 425,070 | 391,152 | 1,169,429 | 1,274,952 | 1,335,664 | 1,411,992 | 1,204,512 | 1,313,200 | 1,375,734 | 1,454,351 | 1,240,647 | 1,352,596 |
| Sales - Alcohol | | 114,425 | 142,478 | 110,032 | 101,746 | 153,532 | 117,993 | 106,821 | 314,112 | 345,549 | 364,883 | 389,697 | 323,536 | 355,915 | 375,830 | 401,388 | 333,242 | 366,592 |
| Sales - Wine & Liquor | | 11,961 | 14,885 | 11,248 | 10,263 | 16,611 | 12,621 | 10,968 | 32,969 | 35,635 | 37,488 | 41,406 | 33,958 | 36,704 | 38,613 | 42,648 | 34,977 | 37,805 |
| Sales - Non Carb Bev | | 151,428 | 189,326 | 145,694 | 135,962 | 201,415 | 154,296 | 139,763 | 416,898 | 460,903 | 485,111 | 510,338 | 429,405 | 474,730 | 499,664 | 525,648 | 442,287 | 488,972 |
| Sales - Candy | | 57,820 | 72,559 | 55,513 | 51,709 | 76,828 | 58,869 | 52,967 | 157,262 | 175,158 | 185,174 | 194,323 | 161,979 | 180,412 | 190,730 | 200,153 | 166,839 | 185,825 |
| Sales - Dairy | | 22,183 | 27,803 | 21,314 | 19,914 | 29,731 | 22,645 | 20,492 | 61,052 | 67,391 | 71,103 | 75,053 | 62,884 | 69,413 | 73,236 | 77,305 | 64,770 | 71,496 |
| Sales - Fluid Milk | | 1,132 | 1,439 | 1,066 | 931 | 1,456 | 1,126 | 947 | 2,876 | 3,328 | 3,540 | 3,635 | 2,963 | 3,428 | 3,646 | 3,744 | 3,051 | 3,531 |
| Sales - Frozen Foods | | 1,368 | 1,754 | 1,245 | 1,080 | 1,766 | 1,350 | 1,092 | 3,250 | 3,945 | 4,202 | 4,334 | 3,348 | 4,063 | 4,328 | 4,464 | 3,448 | 4,185 |
| Sales - Ice Cream & Novelties | | 4,876 | 6,080 | 4,713 | 4,396 | 6,516 | 5,008 | 4,571 | 13,446 | 14,775 | 15,644 | 16,577 | 13,849 | 15,219 | 16,113 | 17,075 | 14,264 | 15,675 |
| Sales - Salty Snacks | | 83,925 | 105,689 | 80,133 | 74,053 | 111,233 | 85,210 | 75,653 | 224,482 | 252,502 | 267,671 | 280,259 | 231,216 | 260,077 | 275,701 | 288,667 | 238,153 | 267,880 |
| Sales - Sweet Snacks | | 10,621 | 13,270 | 10,241 | 9,590 | 14,038 | 10,796 | 9,813 | 29,243 | 32,391 | 34,095 | 35,687 | 30,121 | 33,363 | 35,118 | 36,757 | 31,024 | 34,364 |
| Sales - Grocery | | 15,368 | 19,131 | 14,736 | 13,767 | 20,401 | 15,647 | 14,175 | 42,242 | 46,759 | 49,063 | 51,730 | 43,509 | 48,161 | 50,535 | 53,282 | 44,814 | 49,606 |
| Sales - Ice-Holiday | | 7,035 | 8,764 | 6,893 | 6,511 | 9,580 | 7,289 | 6,814 | 20,120 | 21,619 | 22,833 | 24,394 | 20,724 | 22,267 | 23,518 | 25,125 | 21,345 | 22,935 |
| Sales - Health & Beauty | | 15,298 | 19,223 | 14,683 | 13,722 | 20,323 | 15,537 | 13,971 | 41,704 | 46,470 | 49,057 | 51,327 | 42,955 | 47,864 | 50,529 | 52,866 | 44,244 | 49,300 |
| Sales - Pop 12 oz | | 57,459 | 71,240 | 56,072 | 53,429 | 77,390 | 59,258 | 55,382 | 165,359 | 177,869 | 186,164 | 197,792 | 170,319 | 183,205 | 191,749 | 203,725 | 175,429 | 188,701 |
| Sales - Pop Other | | 15,574 | 19,889 | 14,359 | 12,505 | 20,067 | 15,414 | 12,662 | 37,927 | 45,219 | 48,154 | 49,587 | 39,065 | 46,576 | 49,599 | 51,075 | 40,237 | 47,973 |
| Sales - General Merch | | 34,647 | 43,605 | 33,193 | 30,778 | 46,281 | 35,386 | 31,636 | 93,930 | 104,588 | 110,803 | 116,702 | 96,748 | 107,726 | 114,127 | 120,203 | 99,651 | 110,958 |
| Sales - Publications | | 2,703 | 3,364 | 2,652 | 2,516 | 3,580 | 2,756 | 2,590 | 7,703 | 8,356 | 8,788 | 9,193 | 7,935 | 8,606 | 9,052 | 9,469 | 8,173 | 8,865 |
| Sales - Automotive | | 4,077 | 5,246 | 3,649 | 3,163 | 5,277 | 4,014 | 3,184 | 9,362 | 11,636 | 12,421 | 12,850 | 9,643 | 11,985 | 12,793 | 13,235 | 9,932 | 12,345 |
| Sales - Corn Breakfast | | 1,743 | 2,232 | 1,515 | 1,285 | 2,189 | 1,663 | 1,293 | 3,765 | 4,941 | 5,184 | 5,299 | 3,878 | 5,090 | 5,339 | 5,458 | 3,994 | 5,242 |
| Sales - Breakfast Other | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sales - Com Lunch | | 4,081 | 5,232 | 3,619 | 3,112 | 5,209 | 3,967 | 3,132 | 9,185 | 11,632 | 12,322 | 12,677 | 9,461 | 11,981 | 12,692 | 13,057 | 9,744 | 12,340 |
| Sales - Lunch Other | | 52,075 | 64,938 | 50,863 | 47,890 | 70,882 | 53,961 | 50,127 | 148,208 | 159,301 | 168,602 | 180,219 | 152,654 | 164,080 | 173,660 | 185,625 | 157,233 | 169,002 |
| Sales - Roller Grill | | 9,305 | 11,595 | 9,098 | 8,522 | 12,638 | 9,636 | 8,998 | 26,338 | 28,359 | 30,092 | 32,138 | 27,128 | 29,210 | 30,995 | 33,102 | 27,942 | 30,086 |
| Sales - Bakery | | 16,889 | 21,087 | 16,249 | 15,230 | 22,541 | 17,241 | 15,705 | 46,717 | 51,534 | 54,143 | 57,151 | 48,119 | 53,080 | 55,767 | 58,866 | 49,562 | 54,672 |
| Sales - Drink Bar Hot | | 17,401 | 21,807 | 16,793 | 15,676 | 23,246 | 17,741 | 16,141 | 47,995 | 52,915 | 55,905 | 58,841 | 49,435 | 54,502 | 57,582 | 60,606 | 50,918 | 56,137 |
| Sales - Drink Bar Cold | | 6,023 | 7,528 | 5,822 | 5,479 | 8,165 | 6,232 | 5,697 | 16,857 | 18,346 | 19,393 | 20,697 | 17,363 | 18,897 | 19,975 | 21,318 | 17,884 | 19,463 |
| Sales - Drink Bar Other | | 698 | 892 | 622 | 532 | 884 | 675 | 538 | 1,591 | 2,002 | 2,108 | 2,160 | 1,639 | 2,062 | 2,171 | 2,224 | 1,688 | 2,124 |
| Sales - Miscellaneous | | 3,013 | 3,722 | 2,786 | 2,362 | 3,589 | 2,830 | 2,408 | 7,318 | 8,913 | 9,136 | 9,092 | 7,538 | 9,180 | 9,410 | 9,364 | 7,764 | 9,455 |
| **Total Inside Sales** | | **1,272,131** | **1,588,164** | **1,226,237** | **1,144,276** | **1,696,830** | **1,300,326** | **1,182,989** | **3,525,036** | **3,877,136** | **4,077,437** | **4,305,549** | **3,630,787** | **3,993,450** | **4,199,760** | **4,434,715** | **3,739,710** | **4,113,254** |
| **CAR WASH SALES** | | | | | | | | | | | | | | | | | | |
| Sales - Car Wash | | 21,247 | 30,365 | 19,243 | 23,989 | 49,109 | 37,466 | 54,320 | 140,292 | 116,200 | 75,805 | 145,122 | 144,500 | 119,686 | 78,080 | 149,475 | 148,835 | 123,276 |
| **SERVICE REVENUE** | | | | | | | | | | | | | | | | | | |
| Lottery Commission | | 14,611 | 18,197 | 14,092 | 13,151 | 19,456 | 15,008 | 13,700 | 40,581 | 44,504 | 46,803 | 49,609 | 41,798 | 45,839 | 48,207 | 51,097 | 43,052 | 47,214 |
| DMV Commissions | | 182 | 240 | 177 | 164 | 262 | 199 | 164 | 489 | 526 | 597 | 644 | 504 | 542 | 615 | 663 | 519 | 559 |
| ATM & Bitcoin Commission | | 3,965 | 4,928 | 3,775 | 3,548 | 5,276 | 4,073 | 3,664 | 10,919 | 12,049 | 12,619 | 13,403 | 11,246 | 12,410 | 12,997 | 13,805 | 11,584 | 12,783 |
| Scale Commission | | 278 | 367 | 276 | 260 | 409 | 311 | 261 | 782 | 808 | 930 | 1,011 | 806 | 832 | 958 | 1,041 | 830 | 857 |
| Gift Card Commission | | 1,188 | 1,487 | 1,161 | 1,106 | 1,612 | 1,221 | 1,140 | 3,418 | 3,672 | 3,867 | 4,092 | 3,520 | 3,782 | 3,983 | 4,214 | 3,626 | 3,895 |
| DNR Commission | | 78 | 96 | 74 | 68 | 102 | 79 | 71 | 221 | 246 | 245 | 260 | 228 | 253 | 252 | 267 | 234 | 261 |
| Electric Charging | | 204 | 270 | 203 | 191 | 301 | 229 | 192 | 576 | 594 | 684 | 743 | 593 | 612 | 704 | 766 | 611 | 630 |
| **Total Service Revenue** | | **20,507** | **25,584** | **19,758** | **18,488** | **27,418** | **21,118** | **19,193** | **56,986** | **62,399** | **65,745** | **69,761** | **58,695** | **64,271** | **67,717** | **71,854** | **60,456** | **66,199** |
| **Total Revenue** | | **4,248,580** | **5,333,923** | **4,122,892** | **3,870,829** | **5,647,079** | **4,309,235** | **3,953,878** | **11,358,388** | **12,856,281** | **13,496,684** | **14,089,463** | **11,508,237** | **13,021,955** | **13,669,642** | **14,272,921** | **11,661,628** | **13,191,500** |
| **FUEL MARGIN** | | | | | | | | | | | | | | | | | | |
| GP - Petroleum | | 314,081 | 431,918 | 334,508 | 314,190 | 453,446 | 345,356 | 315,746 | 919,394 | 1,059,596 | 1,117,047 | 1,152,124 | 949,657 | 1,094,476 | 1,153,817 | 1,190,048 | 980,200 | 1,129,677 |
| | | 0.32 | 0.35 | 0.35 | 0.35 | 0.35 | 0.35 | 0.35 | 0.36 | 0.36 | 0.36 | 0.36 | 0.37 | 0.37 | 0.37 | 0.37 | 0.38 | 0.38 |
| **INSIDE MARGIN** | | | | | | | | | | | | | | | | | | |
| GP - Tobacco | | 40,915 | 50,846 | 39,464 | 36,814 | 54,080 | 41,593 | 37,969 | 114,090 | 125,313 | 130,937 | 137,651 | 117,512 | 129,073 | 134,865 | 141,780 | 121,038 | 132,945 |
| GP - Cigarettes | | 59,057 | 73,520 | 57,109 | 53,458 | 78,949 | 60,465 | 55,427 | 165,597 | 180,916 | 189,713 | 200,686 | 170,565 | 186,344 | 195,404 | 206,706 | 175,682 | 191,334 |
| GP - Alcohol | | 19,197 | 23,887 | 18,452 | 17,109 | 25,816 | 19,830 | 17,989 | 52,886 | 58,038 | 61,232 | 65,545 | 54,473 | 59,779 | 63,069 | 67,511 | 56,107 | 61,572 |
| GP - Wine & Liquor | | 2,708 | 3,376 | 2,547 | 2,306 | 3,706 | 2,826 | 2,447 | 7,366 | 8,057 | 8,476 | 9,248 | 7,587 | 8,299 | 8,730 | 9,525 | 7,814 | 8,547 |
| GP - Non Carb Bev | | 65,363 | 81,698 | 62,915 | 58,737 | 86,972 | 66,639 | 60,414 | 180,118 | 198,980 | 209,451 | 220,446 | 185,521 | 204,949 | 215,734 | 227,059 | 191,087 | 211,097 |
| GP - Candy | | 28,877 | 36,240 | 27,702 | 25,777 | 38,347 | 29,392 | 26,393 | 78,317 | 87,371 | 92,410 | 96,955 | 80,667 | 89,992 | 95,182 | 99,863 | 83,437 | 92,691 |
| GP - Dairy | | 5,336 | 6,729 | 5,129 | 4,759 | 7,097 | 5,404 | 4,853 | 14,503 | 16,165 | 17,115 | 17,874 | 14,938 | 16,650 | 17,628 | 18,410 | 15,386 | 17,150 |
| GP - Fluid Milk | | 213 | 273 | 195 | 172 | 278 | 213 | 173 | 513 | 613 | 659 | 684 | 529 | 632 | 679 | 705 | 545 | 651 |
| GP - Frozen Foods | | 364 | 469 | 328 | 288 | 478 | 366 | 289 | 849 | 1,037 | 1,118 | 1,165 | 875 | 1,068 | 1,152 | 1,200 | 901 | 1,100 |
| GP - Ice Cream & Novelties | | 1,960 | 2,461 | 1,891 | 1,746 | 2,613 | 2,008 | 1,814 | 5,309 | 5,899 | 6,281 | 6,528 | 5,469 | 6,076 | 6,470 | 6,826 | 5,633 | 6,258 |
| GP - Salty Snacks | | 32,890 | 41,386 | 31,459 | 29,090 | 43,518 | 33,374 | 29,710 | 88,155 | 99,067 | 104,993 | 109,800 | 90,800 | 102,039 | 108,142 | 113,094 | 93,524 | 105,100 |
| GP - Sweet Snacks | | 3,502 | 4,389 | 3,359 | 3,130 | 4,604 | 3,539 | 3,190 | 9,493 | 10,631 | 11,204 | 11,673 | 9,778 | 10,950 | 11,540 | 12,024 | 10,071 | 11,278 |
| GP - Grocery | | 4,940 | 6,162 | 4,748 | 4,382 | 6,519 | 5,005 | 4,499 | 13,397 | 14,968 | 15,721 | 16,545 | 13,799 | 15,417 | 16,192 | 17,000 | 14,213 | 15,879 |

| | Beginning | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Q1 2025 | Q2 2025 | Q3 2025 | Q4 2025 | Q1 2026 | Q2 2026 | Q3 2026 | Q4 2026 | Q1 2027 | Q2 2027 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GP - Ice-Holiday | | 4,205 | 5,244 | 4,121 | 3,887 | 5,724 | 4,354 | 4,067 | 12,005 | 12,910 | 13,649 | 14,569 | 12,365 | 13,298 | 14,059 | 15,006 | 12,736 | 13,697 |
| GP - Health & Beauty | | 7,851 | 9,856 | 7,549 | 7,069 | 10,457 | 7,991 | 7,211 | 21,509 | 23,887 | 25,208 | 26,429 | 22,154 | 24,604 | 25,964 | 27,222 | 22,818 | 25,342 |
| GP - Pop 12 oz | | 20,456 | 25,380 | 19,950 | 18,978 | 27,606 | 21,122 | 19,715 | 58,733 | 63,199 | 66,237 | 70,496 | 60,495 | 65,095 | 68,224 | 72,611 | 62,310 | 67,048 |
| GP - Pop Other | | 5,484 | 7,003 | 5,053 | 4,400 | 7,065 | 5,426 | 4,455 | 13,342 | 15,919 | 16,951 | 17,455 | 13,743 | 16,396 | 17,459 | 17,979 | 14,155 | 16,868 |
| GP - General Merch | | 17,008 | 21,411 | 16,359 | 15,194 | 22,770 | 17,425 | 16,632 | 46,317 | 51,374 | 54,553 | 57,502 | 47,707 | 52,916 | 56,189 | 59,227 | 49,138 | 54,503 |
| GP - Publications | | 308 | 384 | 304 | 289 | 411 | 317 | 299 | 874 | 947 | 1,006 | 1,058 | 901 | 975 | 1,037 | 1,089 | 928 | 1,005 |
| GP - Automotive | | 1,601 | 2,064 | 1,430 | 1,246 | 2,087 | 1,585 | 1,251 | 3,660 | 4,552 | 4,882 | 5,070 | 3,769 | 4,689 | 5,028 | 5,223 | 3,882 | 4,829 |
| GP - Corn Breakfast | | 455 | 583 | 393 | 333 | 572 | 434 | 335 | 970 | 1,283 | 1,349 | 1,381 | 999 | 1,322 | 1,389 | 1,423 | 1,029 | 1,362 |
| GP - Breakfast Other | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| GP - Corn Lunch | | 1,374 | 1,763 | 1,210 | 1,039 | 1,752 | 1,332 | 1,044 | 3,045 | 3,901 | 4,132 | 4,252 | 3,137 | 4,018 | 4,256 | 4,380 | 3,231 | 4,139 |
| GP - Lunch Other | | 18,060 | 22,597 | 17,644 | 16,528 | 24,693 | 18,714 | 17,337 | 51,179 | 54,982 | 58,471 | 62,565 | 52,714 | 56,631 | 60,225 | 64,442 | 54,296 | 58,330 |
| GP - Roller Grill | | 3,327 | 4,160 | 3,260 | 3,039 | 4,523 | 3,440 | 3,184 | 9,361 | 10,093 | 10,773 | 11,482 | 9,642 | 10,395 | 11,096 | 11,826 | 9,931 | 10,707 |
| GP - Bakery | | 11,910 | 14,944 | 11,798 | 11,537 | 15,181 | 11,974 | 11,641 | 37,741 | 38,757 | 39,427 | 39,959 | 38,873 | 39,919 | 40,610 | 41,158 | 40,039 | 41,117 |
| GP - Prepared Foods | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| GP - Drink Bar Hot | | 9,669 | 12,133 | 9,336 | 8,705 | 12,906 | 9,852 | 8,966 | 26,629 | 29,396 | 31,079 | 32,675 | 27,428 | 30,278 | 32,011 | 33,655 | 28,251 | 31,186 |
| GP - Drink Bar Cold | | 2,381 | 2,974 | 2,301 | 2,166 | 3,226 | 2,462 | 2,253 | 6,665 | 7,255 | 7,664 | 8,180 | 6,865 | 7,473 | 7,894 | 8,425 | 7,071 | 7,697 |
| GP - Drink Bar Other | | 30 | 37 | 28 | 23 | 36 | 28 | 24 | 73 | 89 | 91 | 90 | 75 | 91 | 93 | 93 | 77 | 94 |
| GP - Miscellaneous | | 1,620 | 2,002 | 1,498 | 1,270 | 1,930 | 1,522 | 1,295 | 3,935 | 4,793 | 4,913 | 4,889 | 4,054 | 4,937 | 5,060 | 5,036 | 4,175 | 5,085 |
| **Total Inside Margin** | | 371,059 | 464,071 | 357,500 | 333,472 | 493,916 | 378,629 | 343,875 | 1,026,632 | 1,130,392 | 1,189,694 | 1,252,913 | 1,057,431 | 1,164,304 | 1,225,385 | 1,290,500 | 1,089,154 | 1,199,233 |
| | | 29.2% | 29.2% | 29.2% | 29.1% | 29.1% | 29.1% | 29.1% | 29.1% | 29.2% | 29.2% | 29.1% | 29.1% | 29.2% | 29.2% | 29.2% | 29.1% | 29.2% |
| **CAR WASH MARGIN** | | | | | | | | | | | | | | | | | | |
| GP - Car Wash | | 19,138 | 27,569 | 17,481 | 21,770 | 44,457 | 33,863 | 49,077 | 127,221 | 105,045 | 68,825 | 131,218 | 131,037 | 108,196 | 70,889 | 135,155 | 134,969 | 111,442 |
| **SERVICE MARGIN** | | | | | | | | | | | | | | | | | | |
| Service Margin | | 20,507 | 25,584 | 19,758 | 18,488 | 27,418 | 21,118 | 19,193 | 56,986 | 62,399 | 65,745 | 69,761 | 58,695 | 64,271 | 67,717 | 71,854 | 60,456 | 66,199 |
| **Total Margin** | | 724,784 | 949,141 | 729,247 | 687,919 | 1,019,236 | 778,966 | 727,892 | 2,130,232 | 2,357,433 | 2,441,310 | 2,606,016 | 2,196,821 | 2,431,246 | 2,517,808 | 2,687,557 | 2,264,779 | 2,506,550 |
| Wages - Stores | | -194,821 | -245,714 | -208,782 | -207,541 | -252,314 | -208,470 | -202,774 | -632,649 | -632,305 | -678,588 | -680,147 | -651,629 | -651,274 | -698,946 | -700,552 | -671,117 | -670,813 |
| Wages - Vacation | | -8,104 | -8,807 | -4,669 | -4,904 | -7,770 | -6,146 | -4,833 | -17,945 | -19,249 | -18,840 | -19,218 | -18,483 | -19,826 | -19,405 | -19,795 | -19,038 | -20,421 |
| Wages - Non Productive | | -11,681 | -10,451 | -4,247 | -10,541 | -4,030 | -9,807 | -4,691 | -37,285 | -20,160 | -25,869 | -18,991 | -38,404 | -20,765 | -26,445 | -19,561 | -39,556 | -21,388 |
| **Total Labor** | | -214,605 | -264,972 | -217,699 | -222,986 | -264,114 | -224,423 | -212,298 | -687,879 | -671,714 | -723,297 | -718,357 | -708,515 | -691,866 | -744,996 | -739,907 | -729,771 | -712,622 |
| Health & Vision by Location | | -19,345 | -19,345 | -19,345 | -19,345 | -19,345 | -19,345 | -19,345 | -59,486 | -59,486 | -59,486 | -59,486 | -61,271 | -61,271 | -61,271 | -61,271 | -63,109 | -63,109 |
| FICA Taxes | | -15,733 | -19,363 | -15,582 | -16,200 | -19,025 | -16,190 | -15,458 | -49,873 | -48,942 | -52,424 | -51,940 | -51,369 | -50,410 | -53,997 | -53,498 | -52,911 | -51,922 |
| FUTA & SUTA Taxes | | -779 | -765 | -543 | -490 | -479 | -150 | -260 | -12,691 | -3,945 | -1,843 | -912 | -13,072 | -4,063 | -1,898 | -939 | -13,464 | -4,185 |
| Fringe Benefits | | -3,944 | -3,944 | -3,944 | -3,944 | -3,944 | -3,944 | -3,944 | -12,128 | -12,128 | -12,128 | -12,128 | -12,492 | -12,492 | -12,492 | -12,492 | -12,866 | -12,866 |
| 401-K Expense | | -1,765 | -2,162 | -1,603 | -1,592 | -2,025 | -1,677 | -1,759 | -5,628 | -5,740 | -5,491 | -5,598 | -5,796 | -5,912 | -5,655 | -5,766 | -5,970 | -6,090 |
| Manager Incentive Plan | | -5,242 | -5,242 | -5,242 | -5,242 | -5,242 | -5,242 | -5,242 | -16,118 | -16,118 | -16,118 | -16,118 | -16,602 | -16,602 | -16,602 | -16,602 | -17,100 | -17,100 |
| **Total Fringe** | | -46,807 | -50,820 | -46,259 | -46,813 | -50,060 | -46,548 | -46,008 | -155,924 | -146,359 | -147,490 | -146,182 | -160,602 | -150,750 | -151,914 | -150,567 | -165,420 | -155,272 |
| **Total Wage & Fringe** | | -261,412 | -315,792 | -263,958 | -269,799 | -314,175 | -270,971 | -258,307 | -843,804 | -818,073 | -870,787 | -864,538 | -869,118 | -842,615 | -896,911 | -890,474 | -895,191 | -867,894 |
| Truck/Auto | | -2,500 | -2,500 | -2,500 | -2,500 | -2,500 | -2,500 | -2,500 | -7,575 | -7,575 | -7,575 | -7,575 | -7,802 | -7,802 | -7,802 | -7,802 | -8,036 | -8,036 |
| (Over)/Short | | -1,276 | -1,276 | -1,276 | -1,276 | -1,276 | -1,276 | -1,276 | -3,865 | -3,865 | -3,865 | -3,865 | -3,981 | -3,981 | -3,981 | -3,981 | -4,100 | -4,100 |
| (Over)/Short - Cash | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (Over)/Short - Credit Card | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (Over)/Short - Lottery | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Drive Off Expense | | -46 | 0 | -643 | -799 | -873 | -725 | -317 | -150 | -93 | -1,456 | -1,934 | -155 | -96 | -1,500 | -1,992 | -159 | -99 |
| Trucker Fees | | -1,225 | -516 | -932 | -1,617 | -1,626 | -782 | -694 | -5,799 | -2,481 | -3,095 | -3,132 | -5,973 | -2,555 | -3,188 | -3,226 | -6,153 | -2,632 |
| Fleet Discounts/Expense | | -149 | -789 | -170 | -1,353 | -519 | -97 | -50 | -2,069 | -1,497 | -2,335 | -967 | -2,131 | -1,542 | -2,405 | -693 | -2,195 | -1,588 |
| Computer Supplies | | -1,046 | -2,631 | -1,608 | -1,776 | -1,776 | -1,119 | -1,104 | -3,329 | -3,237 | -6,075 | -4,039 | -3,429 | -3,334 | -6,257 | -4,160 | -3,532 | -3,434 |
| Recruitment & Seminar | | -500 | -500 | -500 | -500 | -500 | -500 | -500 | -1,515 | -1,515 | -1,515 | -1,515 | -1,560 | -1,560 | -1,560 | -1,560 | -1,607 | -1,607 |
| Laundry/Mats/Mops | | -1,368 | -3,321 | -1,872 | -2,998 | -1,311 | -1,766 | -1,563 | -7,986 | -6,502 | -8,273 | -4,686 | -8,225 | -6,697 | -8,521 | -4,827 | -8,472 | -6,897 |
| Miscellaneous | | -774 | -774 | -774 | -774 | -774 | -774 | -774 | -2,345 | -2,345 | -2,345 | -2,345 | -2,415 | -2,415 | -2,415 | -2,415 | -2,487 | -2,487 |
| Repairs & Maint | | -15,617 | -12,740 | -9,517 | -16,165 | -15,330 | -9,082 | -11,916 | -28,197 | -36,088 | -38,806 | -36,691 | -29,043 | -37,170 | -39,970 | -37,792 | -29,914 | -38,286 |
| Car Wash Repairs & Maint | | 0 | -1,953 | -1,041 | -4,702 | -3,784 | -2,052 | -2,176 | -10,363 | -6,285 | -7,774 | -8,091 | -10,673 | -6,473 | -8,007 | -8,334 | -10,994 | -6,668 |
| Parking Lot Maint & Supplies | | -3,147 | -2,491 | -3,063 | -2,917 | -3,464 | -3,167 | -8,618 | -37,036 | -10,778 | -8,556 | -15,401 | -38,147 | -11,101 | -8,813 | -15,863 | -39,292 | -11,434 |
| Refrigeration | | -784 | -1,857 | -5,809 | -2,298 | -9,706 | -3,294 | -784 | -4,004 | -4,579 | -10,064 | -13,521 | -4,124 | -4,716 | -10,366 | -14,339 | -4,248 | -4,858 |
| Security | | 0 | -1,532 | -3,120 | -342 | -2,422 | -711 | -214 | -4,613 | -2,060 | -5,045 | -3,380 | -4,751 | -2,122 | -5,196 | -3,482 | -4,894 | -2,185 |
| Rental/Leased Equip | | -296 | -365 | -282 | -282 | -282 | -282 | -282 | -855 | -924 | -938 | -855 | -880 | -952 | -967 | -880 | -907 | -981 |
| Supplies | | -18,323 | -24,380 | -20,691 | -25,990 | -23,066 | -20,524 | -18,052 | -59,346 | -62,103 | -71,772 | -62,259 | -61,126 | -63,966 | -73,925 | -64,127 | -62,960 | -65,885 |
| Postage Expense | | -175 | -175 | -175 | -175 | -175 | -175 | -175 | -530 | -530 | -530 | -530 | -546 | -546 | -546 | -546 | -563 | -563 |
| Travel Expense | | -45 | -45 | -45 | -45 | -45 | -45 | -45 | -136 | -136 | -136 | -136 | -140 | -140 | -140 | -140 | -145 | -145 |
| Utilities - H/L/P | | -25,819 | -40,526 | -29,468 | -29,653 | -34,991 | -23,544 | -30,488 | -89,407 | -80,714 | -100,644 | -89,912 | -92,089 | -83,136 | -103,663 | -92,610 | -94,852 | -85,630 |
| Utilities - Car Wash | | -5,075 | -7,951 | -4,134 | -15,756 | -10,840 | -5,090 | -10,881 | -36,865 | -21,229 | -28,118 | -27,079 | -37,971 | -21,866 | -28,962 | -27,892 | -39,110 | -22,522 |
| Utilities - Telephone | | -2,999 | -2,999 | -2,999 | -2,999 | -2,999 | -2,999 | -2,999 | -9,069 | -9,069 | -9,069 | -9,069 | -9,359 | -9,359 | -9,359 | -9,359 | -9,640 | -9,640 |
| Utilities - Trash Rmvl | | -5,337 | -5,337 | -5,337 | -5,337 | -5,337 | -5,337 | -5,337 | -16,172 | -16,172 | -16,172 | -16,172 | -16,658 | -16,658 | -16,658 | -16,658 | -17,157 | -17,157 |
| **Total Controllable Expenses** | | -86,501 | -114,657 | -95,958 | -120,253 | -123,595 | -85,840 | -100,744 | -331,244 | -279,794 | -334,176 | -313,280 | -341,182 | -288,188 | -344,201 | -322,679 | -351,417 | -296,933 |
| Rent Expense | | -113,144 | -113,144 | -113,144 | -113,144 | -111,911 | -113,144 | -113,144 | -339,432 | -339,432 | -339,432 | -338,199 | -349,615 | -349,615 | -349,615 | -348,345 | -360,104 | -360,104 |
| CAM Expense | | -622 | -622 | -622 | -622 | -622 | -622 | -622 | -1,865 | -1,865 | -1,865 | -1,865 | -1,921 | -1,921 | -1,921 | -1,921 | -1,979 | -1,979 |

| | Beginning | Jun-24 | Jul-24 | Aug-24 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Q1 2025 | Q2 2025 | Q3 2025 | Q4 2025 | Q1 2026 | Q2 2026 | Q3 2026 | Q4 2026 | Q1 2027 | Q2 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Debit/Credit Card Fees | | -96,739 | -95,191 | -98,818 | -92,452 | -116,271 | -85,045 | -58,779 | -243,751 | -262,622 | -295,055 | -267,899 | -251,063 | -270,501 | -303,907 | -275,936 | -258,595 | -278,616 | |
| Bank Charges | | -350 | -350 | -350 | -350 | -350 | -350 | -350 | -1,050 | -1,050 | -1,050 | -1,050 | -1,082 | -1,082 | -1,082 | -1,082 | -1,114 | -1,114 | |
| Inventory Service | | -2,369 | -2,369 | -2,369 | -2,369 | -2,369 | -2,369 | -2,369 | -7,322 | -7,322 | -7,322 | -7,322 | -7,541 | -7,541 | -7,541 | -7,541 | -7,767 | -7,767 | |
| Bad Debt Expense | | -100 | -100 | -100 | -100 | -100 | -100 | -100 | -300 | -300 | -300 | -300 | -309 | -309 | -309 | -309 | -318 | -318 | |
| Insurance Expense | | -15,095 | -15,095 | -15,095 | -15,095 | -15,095 | -15,095 | -15,095 | -46,643 | -46,643 | -46,643 | -46,643 | -48,043 | -48,043 | -48,043 | -48,043 | -49,484 | -49,484 | |
| Casualty Loss | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Real Estate Tax | | 0 | -106,201 | 0 | 0 | 0 | 0 | 0 | -106,580 | 0 | -106,201 | 0 | -109,777 | 0 | 0 | -109,387 | 0 | -113,070 | |
| IS Service Fees | | -10,660 | -8,970 | -11,521 | -11,267 | -8,085 | -11,967 | -7,123 | -31,774 | -32,327 | -32,711 | -27,991 | -32,727 | -33,297 | -33,693 | -28,830 | -33,709 | -34,296 | |
| Licenses & Permits | | -9,217 | -8,485 | -364 | -3,089 | -2,222 | -2,708 | -1,107 | -3,430 | -14,376 | -12,297 | -6,218 | -3,533 | -14,807 | -12,666 | -6,405 | -3,639 | -15,251 | |
| **Total Non-Controllable Exp** | | -248,296 | -350,528 | -242,383 | -238,489 | -257,025 | -231,401 | -198,690 | -782,147 | -705,937 | -842,877 | -697,486 | -805,611 | -727,115 | -868,163 | -718,411 | -829,779 | -748,929 | |
| Rental Income | | 11,249 | 11,249 | 11,029 | 15,942 | 11,029 | 11,029 | 11,029 | 39,310 | 33,307 | 38,220 | 33,088 | 40,489 | 34,306 | 39,367 | 34,080 | 41,704 | 35,336 | |
| Miscellaneous Income | | 1,148 | 1,104 | 1,186 | 1,010 | 1,217 | 1,290 | 1,011 | 3,268 | 3,253 | 3,398 | 3,623 | 3,367 | 3,350 | 3,500 | 3,732 | 3,468 | 3,451 | |
| Patronage Refund | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Interest Inc/Invstmnt Gain or Loss | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| CHS Equity Projection | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 100,000 | 0 | 0 | 0 | 50,000 | 0 | |
| ERTC Funds Projection | | 0 | 0 | 0 | 0 | 306,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **Total Other Income** | | 12,397 | 12,353 | 12,215 | 16,952 | 318,246 | 12,319 | 12,040 | 242,578 | 36,560 | 41,619 | 36,711 | 143,856 | 37,657 | 42,867 | 37,812 | 95,171 | 38,786 | |
| Advertising | | -5,108 | -5,108 | -5,108 | -5,108 | -5,108 | -5,108 | -5,108 | -15,785 | -15,785 | -15,785 | -15,785 | -16,259 | -16,259 | -16,259 | -16,259 | -16,746 | -16,746 | |
| Donations Expense | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Personnel Costs | | -1,892 | -2,798 | -1,896 | -2,027 | -2,241 | -1,859 | -2,022 | -8,860 | -6,124 | -6,923 | -6,306 | -9,125 | -6,307 | -7,131 | -6,495 | -9,399 | -6,497 | |
| Uniform Costs | | -153 | -74 | -1,166 | -858 | -142 | -982 | -221 | -725 | -725 | -2,161 | -1,386 | -590 | -725 | -2,226 | -1,427 | -608 | -747 | |
| Director Fees | | -2,500 | -2,500 | -2,500 | -2,500 | -2,500 | -2,500 | -2,500 | -7,725 | -7,725 | -7,725 | -7,725 | -7,957 | -7,957 | -7,957 | -7,957 | -8,195 | -8,195 | |
| Legal & Professional | | -1,000 | -1,000 | -1,000 | -1,000 | -1,000 | -1,000 | -1,000 | -3,090 | -3,090 | -3,090 | -3,090 | -3,183 | -3,183 | -3,183 | -3,183 | -3,278 | -3,278 | |
| Audit Expense | | -4,000 | -4,000 | -4,000 | -4,000 | -4,000 | -4,000 | -4,000 | -12,360 | -12,360 | -12,360 | -12,360 | -12,731 | -12,731 | -12,731 | -12,731 | -13,113 | -13,113 | |
| Member Expense | | -417 | -417 | -417 | -417 | -417 | -417 | -417 | -1,288 | -1,288 | -1,288 | -1,288 | -1,326 | -1,326 | -1,326 | -1,326 | -1,366 | -1,366 | |
| Mega Member Patr Discount | | -5,827 | -6,966 | -4,629 | -4,893 | -8,947 | -6,798 | -6,376 | -15,357 | -17,730 | -16,983 | -22,785 | -15,818 | -18,262 | -17,492 | -23,469 | -16,292 | -18,810 | |
| Mega Member Cash Discount | | -1,226 | -1,226 | -1,226 | -1,226 | -1,226 | -1,226 | -1,226 | -3,788 | -3,788 | -3,788 | -3,788 | -3,901 | -3,901 | -3,901 | -3,901 | -4,018 | -4,018 | |
| Mega Member Club Discount | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| SCRIP Discount | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Administrative Allocation | | -81,250 | -81,250 | -81,250 | -81,250 | -81,250 | -81,250 | -81,250 | -251,063 | -251,063 | -251,063 | -251,063 | -258,594 | -258,594 | -258,594 | -258,594 | -266,352 | -266,352 | |
| (Gain) Loss Sale of Assets | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Income Tax Expense | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **Total Other Exp** | | -103,373 | -105,339 | -103,192 | -103,280 | -106,831 | -105,140 | -104,121 | -319,887 | -319,656 | -321,165 | -325,575 | -329,484 | -329,246 | -330,800 | -335,342 | -339,368 | -339,123 | |
| **Cash Flow In (Out)** | | 37,599 | 75,177 | 35,972 | -26,948 | 535,857 | 91,934 | 78,071 | 95,729 | 270,532 | 113,924 | 441,848 | -4,718 | 281,739 | 120,600 | 458,463 | -55,806 | 292,557 | |
| Debt Service - Cash Payment | | -48,415 | -48,415 | -43,415 | -43,415 | -43,415 | -43,415 | -43,415 | -130,244 | -128,818 | -125,965 | -125,965 | -125,965 | -124,539 | -121,686 | -121,686 | -104,472 | -103,046 | |
| Capital Expenditures / Reserve | | -250,000 | -20,000 | -20,000 | -20,000 | -20,000 | -20,000 | -20,000 | -75,000 | -75,000 | -75,000 | -75,000 | -75,000 | -75,000 | -75,000 | -75,000 | -75,000 | -75,000 | |
| UST Quarterly Fees | | 0 | -50,000 | -20,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Effective Date Payments | | -41,452 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Plan Payments within 90 Days | | -76,644 | -76,644 | -76,644 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **Cash Flow After Debt Service** | | -378,912 | -119,882 | -124,087 | -90,363 | 472,442 | 34,519 | 14,656 | -109,515 | 66,714 | -87,041 | 240,882 | -205,683 | 82,200 | -76,086 | 261,777 | -235,278 | 114,512 | |
| Fuel Inventory Sold on Credit | | 750,000 | 25,000 | 25,000 | 0 | -25,000 | -25,000 | -25,000 | -50,000 | 75,000 | 75,000 | -75,000 | -75,000 | 75,000 | 75,000 | -75,000 | -75,000 | 75,000 | |
| Other Product Inventory on Credit | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Cash Balance After Debt | | 735,410 | 615,528 | 491,441 | 401,078 | 873,520 | 908,039 | 922,695 | 746,371 | 784,174 | 679,381 | 920,263 | 656,001 | 736,401 | 656,894 | 918,671 | 625,292 | 739,804 | |
| Fuel Accounts Payable* | | -750,000 | -775,000 | -800,000 | -775,000 | -750,000 | -725,000 | -700,000 | -650,000 | -725,000 | -800,000 | -725,000 | -650,000 | -725,000 | -800,000 | -725,000 | -650,000 | -725,000 | |
| Other Product Accounts Payable** | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| **Net Available Cash** | $ 364,323 | -14,590 | -159,472 | -308,559 | -373,922 | 123,520 | 183,039 | 222,695 | 96,371 | 59,174 | -120,619 | 195,263 | 6,001 | 11,401 | -143,106 | 193,671 | -24,708 | 14,804 | **Total** |
| Proposed Distributions*** | | 0 | 0 | 0 | 0 | 0 | 0 | -66,809 | -28,911 | -17,752 | 0 | -58,579 | -1,800 | -3,420 | 0 | -58,101 | 0 | -4,441 | -239,814 |
| Net Available after Distributions | | -14,590 | -159,472 | -308,559 | -373,922 | 123,520 | 183,039 | 155,887 | 67,460 | 41,422 | -120,619 | 136,684 | 4,201 | 7,980 | -143,106 | 135,570 | -24,708 | 10,363 | |

\* If terms offered for fuel payments, will generate a cash balance that will be needed to satisfy fuel invoices as due. These show the increase in cash balance, but a reserve for fuel invoices due

\*\* If during the 3 years we obtain payment terms for product inventory, will reserve funds based on product accounts payable balance to ensure available balance to pay vendors

\*\*\* Formula is 30% of positive cash flow to be paid out as "net available cash" for distribution to unsecured creditors

**Note:** Beginning balance based on ending cash projection value from current cash flow forecast plus estimate of $200,000 larger CHS payment expected than in cash collateral budget due to updated information from CHS.

**EXHIBIT C: CURE AMOUNTS**

| Counterparty | Location (lease) / contract | Address 1 | City | St | Zip | Due under lease or contract | Property Taxes | Total cure | Construction Lien* |
|---|---|---|---|---|---|---|---|---|---|
| ACES Capital LLC | #3702 – Mega Holiday | 2109 Highland Avenue | Eau Claire | WI | 54701 | | $12,666.23 | $12,666.23 | $20,866.95 |
| PRM Craig, LLC | #3706 – Mega Holiday | 2920 Craig Rd. | Eau Claire | WI | 54701 | $4,345.70 | $14,223.27 | $18,568.97 | |
| Mangrum Ninety-Three LLC | #3709 – Mega Holiday | 5511 S. Highway 93 | Eau Claire | WI | 54701 | $12,333.33 | $17,348.37 | $29,681.70 | $2,552.73 |
| PRM Jeffers, LLC | #3710 – Mega Holiday | 4304 Jeffers Rd. | Eau Claire | WI | 54703 | $4,345.70 | $20,002.50 | $24,348.20 | $10,560.91 |
| Tierra Buena – Kierland LLC | #3711 – Mega Holiday | 1433 Commercial Blvd. | Chippewa Falls | WI | 54729 | | $8,661.24 | $8,661.24 | $11,558.59 |
| Schafer Properties | #3743 | 17158 Cty Hwy J | Chippewa Falls | WI | 54729 | $2,083.33 | | $2,083.33 | |
| Acker Cstores LLC | #3775 – New Lisbon Travel Stop | 1703 E. Bridge St. | New Lisbon | WI | 54950 | | $8,472.26 | $8,472.26 | |
| Super 39 Shell LLC | #3776 – Colby Travel Stop | 1210 N. Division St. | Colby | WI | 54421 | $10,000.00 | $17,141.14 | $27,141.14 | $2,187.40 |
| Acker Cstores LLC | #3777 – Lake Wissota Travel Stop | 17255 County Hwy X | Chippewa Falls | WI | 54729 | | $2,941.97 | $2,941.97 | $4,327.53 |
| | | | | | | | | | |
| Comdata | Truck payment processing | | | | | $5,200.00 | | $5,200.00 | |
| Wagner Fuel | Fuel supply | | | | | $41,129.50 | | $41,129.50 | |
| US Oil | Fuel supply | | | | | $26,963.01 | | $26,963.01 | |

$  207,857.55

*The validity and amount of the liens is disputed by the Debtors. The Debtors and Reorganized Debtor reserve all rights to challenge these liens.

**EXHIBIT D: REJECTED CONTRACTS AND LEASES**

| Vendor | Contract | Desc/Purpose | Stores(s), Brand |
|---|---|---|---|
| Rockitcoin | Rockitcoin Agreement 3719 | Bitcoin | Holiday;#3719 |
| Bitcoin | Bitcoin ATM Agreement 3705 | Bitcoin | Holiday;#3705 |
| Bitcoin | Bitcoin ATM Agreement 3707 | Bitcoin | Holiday;#3707 |
| Bitcoin | Bitcoin ATM Agreement 3715 | Bitcoin | Holiday;#3715 |
| Bitcoin | Bitcoin ATM Agreement 3720 | Bitcoin | Holiday;#3720 |
| Rockitcoin | Rockitcoin Agreement 3716 | Bitcoin | Holiday;#3716 |
| Rockitcoin | Rockitcoin Agreement 3718 | Bitcoin | Holiday |
| Autowash Systems, Inc. | ASI Chemical CPC Agreement | | Holiday;#3702;#3710;#3776;#3771 |
| Comdata | Comdata 3772 Merchant Agreement | Trucking software license | Travel Stop;#3772 |
| Lux Vending | Lux Vending 3701 Kiosk Agreement | Bitcoin | Holiday;#3701 |
| OPIS | OPIS Change Order Form | Add Visit Counts; Change Fleet Transactions | SSC |
| OPIS (Oil Price Info Service) | OPIS General Agreement for Services 2019 | Licensing and data | SSC |
| OPIS | OPS Subscription Order Form | Great Lakes Region data feed | SSC |
| Wagner Oil, Inc. | Wagner RSA 3771-Abby | | Travel Stop;#3771 |
| Wagner Oil, Inc. | Wagner RSA 3772-Stanley | | Travel Stop;#3772 |
| Wagner Oil, Inc. | Wagner RSA 3773-Elk Mound | | Travel Stop;#3773 |
| Wagner Oil, Inc. | Wagner RSA 3774-Durand | | Travel Stop;#3774 |
| Comdata | Comdata 3776 Smart Solutions Agreement | Trucking software license | Travel Stop;#3776 |
| Comdata | Comdata 3701 Smart Solutions Agreement | Trucking software license | Holiday;#3701 |
| Garrow | 3775 Diesel | | |
| Cash Depot | Cash Depot Initial Agreement & Arcadia, Galesville | ATM (Galesville only) | Holiday;#3731;#3732 |
| Cash Depot | Cash Depot-ATM Agreement TS Stores | ATM (Stanley Durand, Elk Mound & Abbostford) | Travel Stop |